**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
Southern Division

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 FEB 22 A 10: 37

CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

| | | |
|---|---|---|
| **MBR CONSTRUCTION SERVICES, INC.,** | * | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| **v.** | | **Case No.: GJH-15-14** |
| | * | |
| **LIBERTY MUTUAL INSURANCE CO., et al.,** | * | |
| | | |
| **Defendants.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

This action arises out of a dispute between a subcontractor, Plaintiff MBR Construction Services, Inc. ("MBR"), and a general contractor, Sigal Construction Corporation ("Sigal") related to payments allegedly owed to MBR on a construction project. *See* ECF No. 1. Plaintiffs brought this action initially seeking to recover for, *inter alia*, breach of contract and breach of a payment bond issued by Defendant Liberty Mutual Insurance Co. ("Liberty Mutual"), the company which issued a surety bond on Sigal's behalf. Presently pending before the Court are Defendants' Motion to Dismiss for Failure to State a Claim, or, in the Alternative, to Stay this Action Pending Exhaustion of Dispute Procedures, ECF No. 7, MBR's Motion for Leave to Amend the Complaint, ECF No. 12, and MBR's Motion for Pre-Judgment Attachment, ECF No. 13. The Court has reviewed the record and deems a hearing unnecessary. See Loc. R. 105.6 (D. Md.). For the reasons stated herein, Defendants' Motion, construed as a motion to stay, is granted, and this case is stayed pending resolution of the relevant contractual dispute resolution

procedures. Plaintiffs' Motions are therefore denied without prejudice to their being refiled upon a lift of the stay.

## I. BACKGROUND

On or around April 5, 2012, Sigal entered a contract (the "Prime Contract") with the Prince George's County Public School System ("PGCPS" or "Owner") to construct the new Hyattsville Area Elementary School in Prince George's County, Maryland (the "project"). *See* ECF No. 1-2 at 2.[1] As a prerequisite to receiving the contract award from PGCPS, Sigal was required to procure a bond that guaranteed payment to Sigal's subcontractors and material suppliers on the project, and Liberty Mutual, as surety, provided the payment bond. ECF No. 1 at ¶¶ 9, 30. On or around April 26, 2012, Sigal and MBR entered a subcontract (the "Subcontract"), pursuant to which MBR was to complete electrical work for the project for $3.64 million. *Id.* at ¶ 8.

According to the Complaint, the project was plagued by delays; Sigal requested that MBR perform extra work, and MBR timely notified Sigal of the costs associated with that extra work. *Id.* at ¶¶ 10–12. Due to the extent of the extra work required, MBR was on the project for longer than anticipated, and claims that it is owed over $1 million in extra work, over $200,000 in "unabsorbed home office overhead costs," and over $20,000 in additional equipment costs. *Id.* at ¶¶ 16, 18. MBR further alleges that Sigal "failed to coordinate the work of the various subcontractors, failed to coordinate the significant amount of extra work, failed to properly and timely process change orders, and directed a significant amount of extra work after the substantial completion date." *Id.* at ¶ 19. MBR last performed work on the project in September

---

[1] Because the subcontract between Sigal and MBR "was integral to and explicitly relied on in the complaint"—indeed it was attached as an exhibit to MBR's Complaint—the Court can consider the contents of that document without converting this Motion into one for summary judgment. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

2014, and alleges that, as of the time of the filing of the Complaint, Sigal owed MBR $2,612,128.13 for costs due under the contract and the costs of the additional work. *See id.* at ¶¶ 43–44. MBR initiated this action in January 2015 alleging breach of payment bond against Liberty Mutual,[2] and breach of contract, or, in the alternative, unjust enrichment or quantum meruit against Sigal. ECF No. 1 at ¶¶ 29–70.

Pursuant to the terms of the Subcontract, the Prime Contract was incorporated into and made a part of the Subcontract. ECF No. 1-2 at 2.[3] MBR agreed that it is bound to Sigal in the same manner that Sigal is bound to PGCPS under the Prime contract: "Except as may be specifically provided by the terms of this Subcontract Agreement, [MBR] shall have only the rights that Sigal has under its Contract with [PGCPS], and [MBR] shall assume all obligations, risk and responsibilities that Sigal has assumed toward [PGCPS] in [the Prime Contract]." *Id.* at 2. The Subcontract also provided for certain mandatory dispute procedures. Specifically, the Subcontract required that, for any "owner-related changes" affecting MBR's work:

> [MBR] agrees, if directed by Sigal, to meet with SIGAL and Owner to review and discuss such changes. Sigal has final authority to settle all Owner-Related Changes, whether or not [MBR] is a party to any negotiations. Notwithstanding any other provisions in the Contract Documents to the contrary, [MBR] agrees that its recovery for Owner -Related Changes shall be limited to the relief SIGAL has recovered from Owner. If [MBR] disputes such relief, such dispute shall be resolved pursuant to Section 23 . . . .

*Id.* at 4. Section 23 of the Subcontract provides, in relevant part:

> If [MBR] submits a claim to Sigal arising out of or relating to issues that Sigal believes are caused by or are the contractual responsibility of the Owner . . . , then Sigal agrees to present such claim to the Owner. [MBR] recognizes and agrees that such Owner-Related Claims shall be submitted and resolved pursuant to the requirements of the contract between Sigal and Owner and that it shall be bound

---

[2] Specifically, Plaintiff alleges that "Liberty Mutual is jointly and severally liable to pay subcontractors and material suppliers that provided labor and materials to the [p]roject and which are not paid by its principal, Sigal." ECF No. 1 at ¶ 40.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

to Sigal to the same extent that Sigal is bound to Owner by the terms of the Contract Documents for such Owner-Related Claims . . . SIGAL has final authority to settle all Owner-Related Claims and, notwithstanding any other provisions in the Contract Documents to the contrary, [MBR] agrees that its recovery for Owner-Related Claims shall be limited to the relief SIGAL has recovered from Owner, whether or not [MBR] is a party to such proceedings involving such claims.

*Id.* at 9. If MBR seeks relief as a result of a dispute or controversy that was *not* caused by

PGCPS, however, MBR and Sigal were to "first attempt to resolve such claim, dispute or

controversy at the field level through direct discussions between the project management staff of

both Sigal and [MBR]." *Id.* at 9. Only if the dispute was not resolved was the case to proceed to

arbitration or litigation, "provided, however, that as a precondition to initiating any [arbitration

or litigation] against Sigal or its bonding company, [MBR] agree[d] that it shall exhaust through

Sigal the remedies available under the Contract Documents for Owner-Related Claims, including

the initiation of litigation or arbitration, as applicable, against Owner through Sigal." *Id.*

## II.    DISCUSSION

Defendants primarily seek dismissal of MBR's Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6), arguing that MBR has failed to exhaust the contractually-imposed

dispute resolution process detailed in the Contract and Subcontract. *See* ECF No. 7-1. Dismissal

under Rule 12(b)(6), however, is not the appropriate remedy. Rule 12(b)(6) provides for the

dismissal of a complaint if it fails to state a claim upon which relief can be granted, and its

purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts

[or] the merits of a claim . . . ." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.

2006) (internal quotation marks and citation omitted). To that end, a complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements

4

of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S. Ct. 1937 (2009). Here, assuming the truth of the facts alleged in the Complaint, as the Court must on a motion to dismiss, *see E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011), the Complaint states a plausible claim for relief: MBR performed work under the Subcontract for which it has not been paid, and either Sigal owes MBR that payment, or Liberty Mutual, as surety, must pay it pursuant to the payment bond. Dismissal, therefore, is not appropriate in these circumstances.

Indeed, in their briefing, the Parties agree that Sigal has not yet received final payment from PGCPS for the project. *See* ECF No. 7-1 at 5; ECF No. 10 at 5–6. Nevertheless, they also agree that in October 2014, MBR, Sigal, and PGCPS agreed to attend mediation in an effort to reach a resolution of their outstanding disputes, but the mediation was unsuccessful. ECF No. 7-1 at 5–6; ECF No. 10 at 5–6. Sigal subsequently initiated a lawsuit against PGCPS in the Circuit Court for Prince George's County, Maryland. ECF No. 11-1. The remaining question, therefore, is whether this Court should stay this matter pending the resolution of Sigal's claim against PGCPS.

A district court has broad discretion to stay proceedings as part of its inherent power to control its own docket. *See Landis v. N. Am.*, 299 U.S. 248, 254, 57 S.Ct. 163 (1936). And one circumstance under which it is appropriate to stay an action is where a contract between the parties provides for particular dispute resolution procedures; indeed, "[t]he general rule is that parties are free to contract for dispute resolution procedures which, in effect, turn breach of contract claims into claims for relief under the contract." *Seal & Co. v. A.S. McGaughan Co.*, 907 F.2d 450, 454 (4th Cir. 1990) (citing *United States v. Utah Const. & Min. Co.*, 384 U.S. 394, 405 n.6, 86 S. Ct. 1545 (1966)). "Parties are bound to exhaust such procedures unless they are

'inadequate or unavailable' . . . ." *Id.* (quoting *United States v. Anthony Grace & Sons, Inc.*, 384 U.S. 424, 430, 86 S. Ct. 1539 (1966). In *Seal*, for instance, a case also involving a contract dispute over a construction project, the United States Court of Appeals for the Fourth Circuit reviewed the terms of the contract at issue and reversed the lower court's denial of a motion to stay, concluding that proceedings before the District Court should have yielded to the dispute resolution procedure detailed in the contract. *Id.* at 455; *see also Kane Builders S & D, Inc. v. Maryland CVS Pharmacy, LLC*, No. CIV.A. DKC 12-3775, 2013 WL 2948381, at *3 (D. Md. June 13, 2013) (staying case where claim at issue was encompassed in contract language requiring mediation of parties' disputes); *N-Tron Corp. v. Rockwell Automation, Inc.*, No. CIV.A. 09-0733-WS-C, 2010 WL 653760, at *7 & n.15 (S.D. Ala. Feb. 18, 2010) (collecting cases, construing contractual mediation clause, and staying case pending mediation).

Thus, this issue turns upon whether the Subcontract requires that MBR's claims await final resolution of Sigal's claims against PGCPS. "The cardinal rule of contract interpretation is to give effect to the parties' intentions." *Tomran, Inc. v. Passano*, 891 A.2d 336, 344 (Md. 2006). In determining that intent, unambiguous contract terms are given their plain meaning. *See Nova Research, Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 283 (Md. 2008). Therefore, the Court's task is to "[d]etermine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999) (quoting *Gen. Motors Acceptance v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985)). Furthermore, "the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing." *Nat'l Union v. David A. Bramble, Inc.*, 879 A.2d 101, 109 (Md. 2005) (citations omitted).

6

Under the plain language of the dispute resolution section of the Subcontract, MBR was required, "*as a precondition to initiating any action . . . against Sigal* or its bonding company . . . [to] exhaust through Sigal the remedies available under the Contract Documents for Owner-Related Claims, including the initiation of litigation or arbitration, as applicable against Owner through Sigal." ECF No. 1-2 at 9 (emphasis added). MBR argues, however, that because this contract provision provides only that it must wait until Sigal has "*initiat[ed]* litigation," as opposed to *completed* litigation against PGCPS, that it has satisfied the conditions precedent to initiating this action against Defendants. ECF No. 10 at 10. Such an interpretation of the dispute resolution procedures provided for in the contract is nonsensical, considering MBR also agreed that "its recovery for Owner -Related Changes shall be limited to the relief SIGAL has recovered from Owner."[4] ECF No. 1-2 at 4.

MBR's arguments that its rights will be prejudiced if the contractual dispute resolution procedures are followed are similarly unpersuasive. Because the Court is staying, rather than dismissing, this action, MBR will be able to proceed with its claims against Sigal and Liberty Mutual at a later date. Any statute of limitations defense will not present a hurdle, and, although its right to a remedy may be delayed, it is not "abrogated" or "waived." *See* ECF No. 10 at 11 (arguing that a pay-if-paid clause in a contract may not "abrogate or waive the right of [a] subcontractor to . . . [s]ue on a contractor's bond." (citing Md. Code Ann., Real Prop. § 9-113)). Thus, because MBR has failed to satisfy a condition precedent to the initiation of the instant

---

[4] MBR's additional argument that its claims in the instant litigation are unrelated to any actions on the part of PGCPS, but are rather solely against Sigal, is belied by the fact that the claims MBR made during the mediation process between PGCPS, Sigal, and MBR are nearly identical to the claims raised in the instant litigation. *Compare* ECF No. 1 *with* ECF No. 7-2 (specifying MBR's "request for equitable adjustment" of its contract to PGCPS).

7

litigation, this action must be stayed pending resolution of the contractual dispute resolution procedures, specifically, Sigal's action against PGCPS.[5]

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim, or, in the Alternative, to Stay this Action Pending Exhaustion of Dispute Procedures, ECF No. 7, construed as a Motion to Stay is **GRANTED**. This action will be stayed and administratively closed without prejudice to the right of Plaintiff to move to reopen the action upon completion of the contractual dispute resolution process. MBR's Motion for Leave to Amend the Complaint, ECF No. 12, and Motion for Pre-Judgment Attachment, ECF No. 13, are **DENIED** without prejudice to being raised upon the reopening of this action.

Dated: February 22, 2016

GEORGE J. HAZEL
United States District Judge

---

[5] Although MBR argues that its proposed First Amended Complaint moots Defendants' Motion to Dismiss or Stay this action, MBR's only substantive addition to was to add a claim against Sigal for violation of the Maryland Construction Trust Statute, Md. Code Ann., Real Prop. § 9-201, on the ground that PGCPS made an additional payment to Sigal for work performed by MBR that Sigal has failed to convey to MBR. *See* ECF No. 12-2. As Defendants argued, however, adding a new claim "does not allow MBR to circumvent the contractually-imposed dispute procedures," ECF No. 17 at 9, particularly where the Subcontract provides that "Sigal may withhold amounts otherwise due under this Subcontract . . . to compensate Sigal for costs Sigal has incurred or may incur for which [MBR] may be responsible . . . ," ECF No. 1-2 at 3, an issue which may be resolved in Sigal's litigation against PGCPS.